Nott, Ch. J.,
delivered tbe opinion of tbe court:
Tbe claimant, a retired naval officer, has been paid at tbe rate of pay prescribed by law at tbe time of retirement. He has also received all of the pay to which be has since been entitled, unless bis pay as a retired officer has been increased by tbe Act 3d March, 1885 (23 Stat. L., p. 436). In. other words, if tbe act of 1885 bad never been passed there would be no case before tbe court.
That act. is in these words:
“Be it enacted, etc., That from and after tbe passage of this act, tbe passed assistant engineers of the Navy shall receive during the third five years after tbe date from which they take rank as passed assistants, when at sea, two thousand four hundred and fifty dollars; on shore duty, two thousand two hundred and fifty dollars; on leave or waiting orders, one thousand nine hundred and fifty dollars. During tbe fourth five years from such date, when at sea, two thousand seven hundred dollars; on shore duty, two thousand three hundred and fifty *120 dollars; on leave or waiting orders, one thousand nine hundred and fifty dollars.
“And section fifteen, hundred and fifty-six of the Revised Statutes is hereby amended accordingly.”
When the claimant was retired in 1884 as passed assistant engineer he had completed his “fourth five years” of service; and if the act of 1885 had then been the law he would have been retired upon the rate of pay which is the basis of his present action. The first question, therefore, is whether the act was intended to be retroactive in the case of a retired officer, giving him something to which he was not entitled at the time when he left the active service.
The act of 1885 is prospective in terms — “that from and after the passage of this act the passed assistant engineers of the Navy shall receive,” etc. It does not refer to the retired list — that is, to officers already on the retired list when it became a law. There is nothing in it indicative of a purpose to right wrongs or equalize pay; nothing which will authorize a court to say that it was intended to act by relation to any previous event in an officer’s official life. All that it does is to give future pay for future services to certain engineers at certain rates. The court therefore can not say that it should operate retroactively and affect the claimant’s pay as of the time when he was placed upon the retired list.
The case then presents a broader question, whether the pay of naval officers on the retired list varies with the pay of officers on the active list — i. e., whether the pay of each retired officer remains irrevocably fixed at the rate which he was entitled to on the day when he was transferred to the retired list.
The law regulating the pay of retired officers in the Navy is the Revised Statutes, section 1588, which provides in such cases as this officer’s that it shall be “ equal to seventy-five per centum of the sea pay provided by this chapter for the grade or rank which they held, respectively, at the time of their retirement.” The language is somewhat ambiguous. The statute does not say that each officer shall receive 75 per cent of the sea pay which he was actually receiving or entitled to receive at the time of his retirement, but that he shall receive 75 per cent of the sea pay of the “ grade or rank ” which he then held. It is contended that this officer is entitled to three fourths, of the pay now *121 attached by law (i. e., by the act of 1885) to the “ grade or rank” which he held at the time of his retirement. It is conceded that he would not be entitled to the pay of a higher grade or rank. It is admitted that the Department can not advance him on the retired list, and thereby increase his pay; but it is insisted that he is entitled to the benefit of whatever increase of pay Congress may attach to his grade or rank.
The act of 1885, as has been said, does not assume to change the law with regard to the pay of retired officers; it leaves the question open whether a retired officer’s pay is to vary with the pay of the active list or whether it is to remain fixed as determined by the law governing it at the moment of retirement.
The Act 3d March, 1882 (22 Stat. L., p. 280), seems to answer that question:
“Hereafter there shall be no promotion or increase of pay in the retired list of the Uavy, but the rank and pay of officers on the retired list shall be the same.that they are when such officers shall be retired.”
It appears to the court that this statute was intended to meet such questions as are presented by this case, and to render the pay of retired officers fixed and certain. The last clause of the statute of course can not bind the legislative power; and of course it will always be witbin the power of Congress to increase the pay of officers on the retired list, notwithstanding this clause of the statute. But that raises the question whether this act of 1885 has done so — whether it was within the legislative intent that it should do so; and that question we have already answered in the negative. The act of 3882 laid down a general rule applicable to all officers; the act of 1885 did not repeal it. in terms or declare its provisions to be an exception to the general rule of the previous statute, or prescribe anything which can not be construed in harmony with the then existing law. The two statutes are not in any of their provisions irreconcilable. Moreover, longevity pay is a consideration given for increased experience and as an inducement to experienced officers to remain in the service. (Young’s Case, 19 C. Cls. R., 145.) There can be no good reason for ingrafting an increase of longevity pay upon the retired list unless the terms of a statute clearly indicate that such was the legislative intent.
*122 The counsel for the claimant has relied on the decision of this court in the case of Bradbury (20 C. Cls. R., 187). But that case rested not on this act of 1885, but upon two different and entirely distinct statutes. The first was a special enactment authorizing the President “ to appoint upon the retired list of the Navy, with the rank of master, Edward E. Bradbury, now a mate on the retired list.” The second was The Naval Appropriation Act, 3d March, 1883 (22 Stat. L., p. 473), directing that “all officers of the Navy shall be credited with the actual time they may have served as officers or enlisted men in the Begular or Yolunteer Army or Navy, or both.” The former act changed the officer’s position on the retired list and in effect placed him there anew. The latter act declared that all officers should receive “all the benefits of such actual service” in either the Army or Navy. Its purpose was to rectify an injustice which had been done to some naval officers and to place all officers of the Navy, in the matter of longevity pay, upon the same plane of actual service. Before the decision in Bradbury it had been held that this statute was retroactive, and that the actual service which it designated should be credited to an officer as of the time when he would have been entitled to have received the credit if the act had then been in force. (Hawkin’s Case, 19 C. Cls. R., 661.) It necessarily followed in the Bradbury Case (inasmuch as the officer had not been credited with his former service when he should have been credited with it) that he had not been allowed at the time of his retirement (or appointment as master upon the retired list) three-fourths of the pay to which he was then entitled. In this case the retroactive element is wanting in the act of 1885. The claimant was allowed when he was retired all that he was entitled to; no subsequent statute has specifically changed. the rate of his retired pay; and the question is simply whether the Bevised Statutes intended that his retired pay should vary with subsequent changes in the pay of his grade or rank, or remain fixed as the law existing at the time of his retirement fixed it. ■ The answer to that question, as we have before said, is to be found in the act of 1882.
The judgment of the court is that the petition be dismissed.